REBECCA DAVIS, and RICHARD G. OWENS, Plaintiffs in Error.

*vs.*

WILLIAM PAWLETTE, Defendant in Error.

ERROR TO THE MILWAUKEE COUNTY COURT.

Upon the answer of a garnishee, where the plaintiff in attachment does not make an issue, the court must take the statements as admitted. A motion for judgment upon the answer is in the nature of a demurrer to evidence, and if the facts stated do not raise or establish a liability, or if the garnishee's liability is positively denied, the plaintiff must fail.

In such case the plaintiff may make an issue with the garnishee as directed by the Statute, and may thus establish the liability, or prove the alleged fraud, as the case may be.

Where the maker and the endorsee of a negotiable promissory note were summoned as garnishees of the maker, and judgment rendered against them both jointly, it was held to be error.

It appears from the bill of exceptions that a writ of attachment was issued out of the Milwaukee County Court, on the 11th day of May 1853, at the suit of William Pawlette against John Davis. The sheriff made return to the writ that he could not attach and get possession of any property of the said John Davis, but that he had garnisheed the said Richard G. Owens and Rebecca Davis. On the 9th of July, 1853, the said garnishees appeared in open court, and on motion of the plaintiff below, were severally sworn to make true answers touching their indebtedness, &c., to the said John Davis.

Rebecca Davis answered that she was the sister of the defendant, who was in California; that at the time of the serving the garnishee process upon her, she had no property or effects of the defendant in

posses sion; that about a week before her brother left,
she purchased of him a note against Richard G.
Owens for $2150.00 payable to John Davis or order,
bearing no interest; that she paid the defendant the
full face of the note in money, and notes which she
held against him; about $1000 in cash, as near as she
can recollect. That the note against Owens became
due in January, 1853, and when she presented the
note to him for payment, he told her that there was
a judgment against the property sold by the defend-
ant to him for which the note was given, which he
had to pay, and which would be a set off against the
note. That she allowed the same because she thought
it was right, and because her lawyer so advised; that
Owens paid her one hundred and twenty dollars, and
gave a new note for the balance for one thousand
dollars, due the 1st of May last, on which she had
received two hundred dollars, which last mentioned
note she still held.

This garnishee was subjected to a long examination
in regard to the source of her means with which she
purchased the note of her brother, but nothing was
elicited which directly contradicted her relation of
the transaction.

From the examination of Owens it appeared that
the note for $2150.00 was reduced to one thousand,
as stated in the answer of Rebecca Davis, and that
there was $800.00 principal due on the note at the
time of the service of the garnishee process.

At the September term 1853, judgment was enter-
ed by default against John Davis, and damages as-
sessed at $395.20, and costs taxed at $40.70. At the
same term, the plaintiff below by his counsel moved
the court for judgment against the said garnishees

June Term
1854.

Davis et al.
vs.
Pawlette.

Rebecca Davis and R. G. Owens, upon the answers made by them to the amount of said judgment and costs so recovered against the said John Davis. Whereupon the County Court rendered judgment against the said garnishees Rebecca Davis and R. G. Owens, in favor of the said plaintiff Wm. Pawlette, for the sum of $432.92, to all of which the plaintiffs in error excepted.

*D. A. J. Upham*, for the plaintiff in error.

*Peter Yates*, for the defendant in error.

*By the Court*, CRAWFORD, J.   The principal question in this case is, whether upon the answers of the garnishees, they are liable, jointly or severally to the plaintiff.

It appears that the garnishee, Owens, became indebted to the defendant in the action, John Davis, for the purchase of certain property, and that he gave Davis his promissory note, *payable to John Davis or order*, for the sum of $2150, which with another note for $200, payable to Rebecca Davis, and other payments amounted to the indebtedness.   The note for $2150 was endorsed to the garnishee Rebecca Davis, and when it became due, she in settling with the maker of the note, Owens, took from him a note for $1000, payable to her, and delivered up the note for $2150.   Upon the note given to Rebecca Davis, for $1000, there remained due at the time Owens was served with the garnishee process, the sum of about $800.

So far as Owens is concerned, there can be no pretence from his disclosure or that of his co-garnishee that he is liable.   He was at one time indebted to

the defendant in the action, but that indebtedness ceased when his note was endorsed to Rebecca Davis (assuming that such endorsement was made in good faith), and by the settlement with her, his original note was returned to him and he gave another note to her. If this transaction was a fair one, his indebtedness to John Davis was cancelled. Thereafter he was indebted to Rebecca Davis on his promissory note given to her, and he could not be held liable as the garnishee of John Davis.

There was no issue made up between the plaintiff in the action and the garnishees. The plaintiff seems to have been satisfied with the disclosures or answers of the garnishees, and relying upon these answers as showing enough to entitle him to the judgment thereon against the garnishees, he moved for such judgment.

Now there is nothing in the answer of Miss Davis which tends to establish a liability on the part of either garnishee. Her credibility is not impaired by anything stated by her. Her disclosure is simple and consistent, and the plaintiff adduced no evidence to show that the transfer of Owen's note to her was without consideration and with a fraudulent purpose. On the contrary, from her own statements, which must be taken as true for they are not disproved nor is her veracity impugned, it appears that the note was fairly and honestly endorsed to her, by her brother, and that she had on settlement with Owens delivered that note to him and received another note from him for the balance remaining due to her.

If indeed the transfer of the first note was a fraudulent scheme by which to hinder and delay the creditors of John Davis, and that although transferred by endorsement to Miss Davis, it was nevertheless

the property of her brother, it was incumbent on the plaintiff to prove it, and certainly the disclosures of these garnishees fall short of proving any such thing. Mere suspicion that Miss Davis had not the means to pay her brother a consideration for the note is not enough. She swears positively, and she appears on the record entitled to credence.

But there is a question presented in this case which of itself is fatal to the plaintiff's right to recover against either of these garnishees. It is this,—can Owens, the maker of a negotiable promissory note payable to the defendant in the attachment suit, John Davis, be held liable as the garnishee of Davis, the note remaining unpaid? This is an important question, and we feel called upon to pass upon it, in the present case.

If A. is indebted to B. and has given him a negotiable promissory note for the amount, and while the note is outstanding and unpaid, C. who is a creditor of B. commences a suit by attachment against B. and causes A. to be summoned as garnishee, a judgment against the garnishee ought to be esteemed a satisfaction of his outstanding liability; but it is obvious that at the time of such judgment, the note may have been transferred to a *bona fide* holder, and if a judgment against the maker of the note as garnishee of the payee ought to be a satisfaction of the note, then the *bona fide* holder or endorsee of the note would be deprived of his property, and a bar created to his demand, by a proceeding to which he was not a party, and in which he had no day in court. Or if the *bona fide* endorsee would not be affected by the garnishee proceeding, (and we think he would not be concluded by it) then the maker of the note would be liable

to a judgment against him as garnishee, and also

might be compelled to pay the amount of the note to the endorsee. We cannot indulge in a view of the law which would be productive of such glaring injustice.

Under the *trustee process* of Massachusetts, the courts of that State have frequently held, that the maker of a negotiable promissory note was not answerable as the *trustee* of the payee, because an indebtedness of this kind was not included in the terms "goods, effects or credits of the principal defendant." *Vide Erenson vs. Healey et al.*, 2 *Mass.* 32; *The Maine Fire & Marine Ins. Co. vs. Weeks et al.*, 7 *Mass.* 438; *Wood vs. Bodwell et al.*, 12 *Pick.* 268; *Perry vs. Coats et al.*, 9 *Mass.* 537.

In this State, in the case of *Carson vs. Allen*, 2 *Chand.* 123, the Supreme Court held that the maker of a negotiable promissory note *not due* at the time of the service of the garnishee process, was not liable as garnishee of the payee of the note. We think however, that it can make no difference whether the note has matured or not, at the time the service is made. Serious difficulties exist in the one case, as in the other. An innocent endorsee before maturity of the note would be protected by the rules of the *law merchant*, but in a suit by an endorsee against the maker of a note, the plaintiff would not be precluded by any previous proceedings in attachment in which his endorser was garnishee (and to which he was not a party) from proving that the note came to his hands before maturity and without notice of any equities between the parties. In the trial of an issue in the garnishee proceedings, evidence might be given to satisfy a jury that the note had been transferred *after*

21

June Term 1854.

Davis et al. vs. Pawlette.

*maturity,* while in a suit by the endorsee, he might prove beyond doubt that he acquired it *before maturity.* To avoid the possibility of such a state of uncertainty in the remedial law of this State, as well as from a conviction of the correctness of the rule, we hold that the payer of negotiable paper cannot be made liable as the garnishee of the payee.

Upon the answer of a garnishee, where the plaintiff in attachment does not make an issue, the court must take the statements as admitted. If he makes a motion for judgment upon the answer, his motion is in the nature of a demurrer to evidence, and if the facts stated do not raise or establish a liability, or if the garnishee's liability is positively denied, the plaintiff must fail. In such a case it is incumbent upon the plaintiff to make an issue with the garnishee as directed by the Statute, and establish the liability of the garnishee, if he can do so.

The judgment in this case was rendered against both the garnishees. Even admitting all that the plaintiff in the action claims to be the effect of the disclosures or answers of the garnishees, we cannot see why a *joint* judgment should have been rendered against them. Upon this hypothesis, Owens was indebted to *John Davis* and not to *Rebecca Davis* and therefore he (Owens) alone would be liable; or, if a *chose in action* could be held subject to the garnishee process, Rebecca Davis would be liable as garnishee. There is a palpable incongruity in this joint judgment, which cannot be tolerated.

The judgment against the garnishees in the County Court, must be reversed with costs.